UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

KEY WEST DIVISION

Case No. 4:24-cv-10061-GAYLES/GOODMAN

RESIDENCES ORC LLC,

    Plaintiff,

v.

ALLIANZ GLOBAL RISKS US
INSURANCE COMPANY,

    Defendant.
_____/

**ORDER ON DEFENDANT INSURANCE CARRIER'S**
**PRIVILEGE CLAIMS CONCERNING PORTIONS OF ITS CLAIMS FILE**

This lawsuit concerns a claim by a real property owner, Residences ORC LLC ("ORC"), who hired a general contractor to construct a luxury condominium project in Key Largo, Florida. To protect the project, ORC purchased a Builders Risk policy from Defendant, Allianz Global Risks US Insurance Company ("Allianz"). According to ORC, a severe rainstorm impacted the project, causing physical damage to the interior ductwork, metal framing, and drywall. The damage allegedly caused the project to be delayed, which, in turn, caused ORC to sustain a loss of at least $4.96 million. ORC submitted a delay-based claim to Allianz, which denied coverage, a decision which

caused ORC to file this lawsuit. We need to resolve a discovery dispute which was generated after Allianz asserted objections to myriad document requests on the basis of the work product doctrine and the attorney-client privilege.

Allianz prepared a privilege log[1] and, during a discovery hearing, the Undersigned required [ECF No. 28] Allianz to later file the purported work product documents under seal. Because one of Allianz's retained lawyers prepared some of the documents at issue, the Undersigned also required Allianz to file those materials under seal (and to file under seal the law firm's bills to Allianz from the date of the law firm's retention to the date of the coverage denial letter). I also directed Allianz to file: Plaintiff's demand letter and its response; its coverage denial letter; Plaintiff's response to the coverage denial letter; Plaintiff's Civil Remedy Notice ("CRN"); and its response to the CRN.

Although those documents were filed under seal, there is nothing confidential or privileged about them (as they were exchanged between the insured and the insurer), so this Order therefore need not be filed under seal.

The fundamental issues underlying the dispute are: (1) when did Allianz reasonably anticipate litigation (*i.e.*, when did the work product protection begin, and did

---

[1] Allianz later filed an updated privilege log [ECF No. 32]. In its under-seal filing of the documents subject to work product and attorney-client privilege claims, Allianz noted that some of those documents had, in fact, been produced to ORC after the discovery hearing. [ECF No. 33].

it begin *before* the presumptive start date of the coverage denial?); (2) whether Allianz's counsel was providing *legal advice* in documents (or whether she was serving as a *de facto* claims adjuster and/or factual investigator); (3) whether all of the privilege log entries contain information sufficient to allow Plaintiff to evaluate the merits of the privilege claim; (4) whether third parties who authored or received documents were on the Allianz team investigating the claim, and, if so, whether the documents they exchanged with Allianz are entitled to work product protection (and, if so, when does the protection begin?).

Allianz, of course, has the burden of proving its work product doctrine claim and its attorney-client privilege assertion.

After reviewing both the under-seal documents and the publicly-submitted materials, the Undersigned concludes that Allianz did not rebut the presumption -- and that its work product protection therefore began **on the day it denied the claim**. Other related rulings are outlined below.

**Factual Background**

The policy period for the insurance policy was May 3, 2019 to February 18, 2021.

Work on the project began on or around May 13, 2019, and ORC says the anticipated completion date was February 18, 2021.

According to the First Amended Complaint, a severe rainstorm impacted the Project on June 2, 2020. [ECF No. 10, ¶ 19]. Craft Construction Company ("Craft") was

required to remediate damage sustained when water penetrated the roofing systems of the three building, causing physical damage to the interior ductwork, metal framing, and drywall. *Id.* at ¶¶ 20–22. ORC claims that the unanticipated remediation and repair work (which had to be done out of sequence from the scheduled contract work), caused the Project completion to be delayed until December 31, 2021, a total of 213 days beyond the February 18, 2021 project completion date. *Id.* at ¶¶ 23–25.

At the hearing, Allianz and ORC provided the following relevant dates:

February 1, 2022:  ORC submits its initial claim

January 6, 2023:  ORC's counsel submits a demand letter

March 22, 2024:  Allianz denies the claim

July 26, 2024:  ORC files this lawsuit

As we will discuss below, the rebuttable presumption in first party insurance lawsuits filed by an insured against the carrier is that the carrier first anticipated litigation when it issued its coverage denial or decision -- and that documents created *before* the denial are **not** covered by the work product doctrine (but that documents created *after* the denial **do** enjoy work product protection).

ORC's position is that Allianz's work product protection begins on March 22, 2024, when it denied the claim. But Allianz contends that the presumption has been rebutted and that protection begins on January 6, 2023, when ORC's counsel sent the initial demand letter.

4

But there are also other dates when Allianz may have first anticipated litigation (assuming that the presumption has been rebutted): when Allianz first retained outside coverage counsel (on January 13, 2023, when Allianz's outside counsel, Diane Barnes-Reynolds, received the file assignment); when Allianz responded to the demand letter from ORC's counsel (on February 3, 2023); when ORC submitted its CRN to State of Florida insurance regulators (on April 11, 2023); when Allianz's outside counsel responded to the CRN with letters to Allianz's counsel and insurance regulators (on June 9, 2023); when ORC's attorney responded to the June 9, 2023 letter (on July 18, 2023); when the Allianz claim handler responded to the July 18, 2023 letter (on August 1, 2023); or when Ms. Barnes-Reynolds reviewed a response from the Allianz claim analyst about preparation of a claim denial letter (on March 18, 2024).

A post-hearing Order [ECF No. 29] expressly authorized Allianz to submit affidavits or declarations in support of its work product doctrine and attorney-client privilege claims, but it did not do so (and the deadline has expired). Given this lack of participation, ORC could not have filed an authorized "response" (as there were no affidavits or declarations to respond to in the Court record).

In any event, additional details about the specifics of the events noted above will help the analysis of when Allianz anticipated litigation (assuming that a date other than the presumptive claim denial event is used).

5

The January 6, 2023 Demand Letter

This letter from ORC's attorney demands that Allianz accept coverage and tender payment. It mentions the damage caused by a June 2–4, 2020 rain event, the 213-day construction delay, the $4.373 million claim for "soft costs", and asserts that the entire claim is expressly covered. It mentions Allianz's March 21, 2022 letter, in which it said it was "evaluating the occurrences" which triggered the delay. And it flags the lack of an update from Allianz for nine months.

After reminding Allianz of its duty to handle the claim in good faith, the letter demands that Allianz take certain steps within 14 days: (1) pay the claim (and, if a portion is disputed, to pay the undisputed portion); (2) confirm the status of its investigation; (3) identify the policy provisions which Allianz deems unsatisfied; and (4) coordinate an in-person meeting with Allianz (and its retained consultants) and ORC (and its consultants).

The letter then says that ORC will pursue all available remedies, including a demand for the recovery of attorney's fees and costs, if Allianz fails to comply.

Allianz's February 3, 2023 Letter to ORC's Attorney

Sent on behalf of Lourdes Reyes (Allianz's Executive General Adjuster, Property, Engineering & Energy Claims), the letter begins by noting that Allianz is conducting an investigation under a reservation of rights. The letter mentions its March 22, 2022 request for documents and information and contends that some items and information had not yet been produced. The letter mentions 20 categories of missing documents and asks ORC

6

to help it obtain the information and documents. The letter also highlights some policy provisions and explains that the information and documents are needed to complete the investigation and to respond to the coverage/payment demand.

### April 11, 2023 CRN from ORC's Counsel

The letter accuses Allianz of not attempting to settle the claim in good faith. It says that Allianz is continuing to request more documents even though it knows that all available documents have been produced. Likewise, the CRN says Allianz is exhibiting a pattern of failing to communicate with its insured (*i.e.*, ORC) and has been continuously delaying the claim by issuing repeat requests for documents which Allianz knows do not exist. It also contends that Allianz failed to adopt and implement standards for the proper investigation of claims.

### June 9, 2023 Letter (from Allianz's Attorney) Re: CRN

Sent by Allianz's outside counsel, the letter denies the allegations and describes them as being without merit. Ms. Barnes-Reynolds wrote that the CRN is based on insufficient and incorrect factual allegations, generating a limited, unsupported and misleading presentation. Her letter emphasizes that ORC's claim of delay concerns a June 2–4, 2020 loss date which was not even reported until February 1, 2022.

Moreover, she pointed out that when notice was finally provided, it was after three extensions of the policy term had been requested and granted. Those extensions, she emphasized, were based on ORC's representation that there were no known or

unreported losses and that no conditions existed which could lead to a loss or claim. Similarly, Allianz's counsel pointed out that ORC had not mentioned that the extensions were needed for repairs for a direct physical loss or for a delay resulting from direct physical loss.

Furthermore, the CRN response letter explained, neither ORC nor its contractor, Craft, signed authorization forms to allow Allianz to obtain documents directly from third parties.

Finally, the letter pointed out that the claim was still open and that Allianz's investigation was ongoing.

### July 18, 2023 Reply Letter from ORC's Attorney Re: CRN

This letter, still concerning the CRN, noted that Allianz failed to cure within the statutory 60-day period and therefore faces additional and increased exposure for failure to handle the claim in good faith.

Signed again by ORC's attorney, this letter says that a delay in adjusting the claim effectively becomes a denial of coverage. Similar to the initial January 26, 2023 letter, this demand letter says that ORC expects payment of the undisputed portion within 14 days. It also encloses an "Impact of Loss on Completing" Report, prepared by Imperium, ORC's consultant.

<u>August 1, 2023 Letter from Allianz Adjustor to Plaintiff's Counsel</u>

Lourdes Reyes (Allianz's Executive General Adjuster, Property, Engineering & Energy Claims) sent this letter, responding to the July 18, 2023 letter. It proffers Allianz's position that there might be a minimum of eight separate occurrences, with a $50,000-per-occurrence deductible. It identifies $275,000 in damages – but $400,000 in deductibles.

It also follows up on ORC's request for a meeting within the next 30 days. Each side's consultants and experts would be expected to attend. And the letter seeks confirmation about whether any party or consultant intends to have counsel present at the meeting.

\*\*\*

The parties did not submit any additional demand and response letters. Moreover, the parties have not disclosed whether the requested, and discussed, meeting ever occurred.

Allianz filed its attorney's bills under seal. [ECF No. 33]. I ordered this submission because the bills might have contained entries revealing whether Ms. Barnes-Reynolds was involved in providing legal advice to her client or whether she was acting in the role of a claim examiner as part of Allianz's business of evaluating and adjusting claims.

**Applicable Legal Principles and Analysis**

"The attorney work[ ]product privilege traces its roots to the recognition by the Supreme Court, in *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S. Ct. 385, 393, 91 L. Ed. 451

9

(1947), that 'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Cox v. Admn'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1421 (11th Cir. 1994), *opinion modified on reh'g on other grounds*, 30 F.3d 1347 (11th Cir. 1994); *see also United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir. 2001) ("The work[ ]product doctrine reflects the strong 'public policy underlying the orderly prosecution and defense of claims.'"). That public policy has been codified and is now governed by the principles set forth in Federal Rule of Civil Procedure 26(b)(3)(A), which reads in pertinent part:

> Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party **or its representative** (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).

Before determining whether the Undersigned should sustain Allianz's work product and attorney-client privilege objection to the document request that ORC served on it, the Undersigned will first outline the relevant legal principles underlying the work product doctrine and the attorney-client privilege.

First, federal law governs work product assertions, regardless of whether they arise in diversity actions or federal question jurisdiction lawsuits. *See, e.g., Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 699–700 (S.D. Fla. 2007); *see also Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (stating that, "[u]nlike the attorney[-]client privilege, the work product privilege is governed, even in diversity

10

cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)"); *Bradt v. Smith*, 634 F.2d 796, 799 (5th Cir. 1981) (holding that work product immunity "is embodied, as a federal right, in the Federal Rules of Civil Procedure").

Second, "district courts are entitled to **broad discretion** in managing pretrial discovery matters." *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002) (emphasis added). This discretion extends to rulings concerning the applicability of the work product doctrine. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013).

Third, the party claiming work product immunity always has the burden to establish the claimed protection. *Hinchee*, 741 F.3d 1185 at 189; *Milinazzo*, 247 F.R.D. at 698.

Fourth, a party must anticipate litigation at the time the documents were created for the protection to apply. *Milinazzo*, 247 F.R.D. at 698.

Fifth, the Court must determine when the document was created and why it was created. *Id*. In fact, "in determining whether a document was made in anticipation of litigation, the primary focus is the reason or purpose for creating the document." *Place St. Michel, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 06-21817-CIV, 2007 WL 1059561, at *2 (S.D. Fla. Apr. 4, 2007) (emphasis added) (quoting *Guidry v. Jen Marine LLC,* No. Civ. A 03-0018, 2003 WL 22038377, at *2 (E.D. La. Aug. 22, 2003)).

Sixth, applying a work product objection in the context of producing insurance claim files in a direct breach of contract action is somewhat "complex" because "it is in the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation." *Milinazzo*, 247 F.R.D. at 701. Recognizing this practical reality, many courts, including several in the Southern District of Florida, establish a rebuttable presumption that documents or things prepared before an insurer's final decision on a claim are not work product, but that documents and things produced after a claim's denial are work product. *See id.*; *see also Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 268 F.R.D. 695, 698 (S.D. Fla. 2010); *1550 Brickell Assocs. v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 698 (S.D. Fla. 2008); *accord Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 662 (S.D. Ind. 1991).

A party involved in a dispute with an insurance carrier may rebut the presumption that documents prepared before the carrier's final decision are not work product "by specific evidentiary proof of objective facts." *Milinazzo*, 247 F.R.D. at 701; *see also Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-81397-CIV, 2015 WL 1860826, at *4 (S.D. Fla. Apr. 22, 2015); *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, No. 6:04-CV-1838-ORL-22, 2006 WL 1733857, at *2 (M.D. Fla. June 20, 2006).

In determining whether the presumption has been rebutted, the Court may consider the length of time between the alleged date of anticipated litigation and the date the suit was actually filed, whether the parties were working towards a resolution, and whether there was a clear intention to sue made by one of the parties. *Sun Cap. Partners*,

12

2015 WL 1860826, at *4.

But some courts have clarified and limited this rebuttable presumption about work product in the insurance context and applied it only to an insurer's investigation of claims, as the rationale justifying the presumption is inapplicable to the insured (or its agents). *See Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-81397-CIV, 2015 WL 9257019, at *1 (S.D. Fla. Dec. 18, 2015) (explaining that the district judge held that the *Milinazzo* presumption "should only be applied to insurance companies and not to an insured").

United States District Judge Kenneth A. Marra's opinion in *Sun Cap. Partners* noted that courts in this District that have adopted the rebuttable presumption have done so only when applying the work product doctrine to an *insurer's* investigation of claims. No. 12-81397, ECF No. 208, p. 5, (S.D. Fla. Aug. 11, 2015). In addition, Judge Marra pointed out that those courts note that a "special analysis" is necessary because "insurance companies ordinarily investigate a claim in contemplation of litigation." *Id.* He emphasized that "[u]nlike an insurer, an insured does not have 'a duty in the ordinary course of business to investigate and evaluate [insurance] claims.'" *Id.* (quoting *Harper*, 138 F.R.D. at 663). As a result, he concluded that applying the presumption to the insured was contrary to law. *Id.*

The Undersigned agrees with that analysis and concludes that the *Milinazzo* insurance context rebuttable presumption applies only to the **insurer's** files. Here, the

presumption applies because the questions concern the insurer's assertion of privilege (not the insured's assertion).

Seventh, the burden to demonstrate that a privilege applies is "not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011) (internal citation omitted). In other words, "[t]he mere conclusory assertion that material sought is covered by . . . [the] work product privilege is not sufficient to render such material undiscoverable." *Place St. Michel*, 2007 WL 1059561, at *3 (citing *Ameritrust Co., N.A. v. White*, Civ. No. 1:90-CV-2691-JEC, 1993 WL 819124, at *3 (N.D. Ga. Oct. 20, 1993)).

Eighth, an improperly asserted claim of privilege is no claim of privilege at all. *Bridgewater*, 286 F.R.D. at 639.

Ninth, the party claiming a privilege must provide the Court with underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit. *Id.* In other words, "the onus is on the party claiming immunity to provide competent evidence that the materials in question were created in anticipation of litigation." *Place St. Michel,* 2007 WL 1059561, at *3 (emphasis added).

Tenth, the mere fact that the party seeking work product protection submits an affidavit (which was not done here for Allianz's work product doctrine claim) is not necessarily sufficient to sustain the work product assertion. *See, e.g., Fid. Nat'l Title Ins.*

14

*Co. v. Wells Fargo Bank, N.A.*, No. 12-22437, 2013 WL 12138558, at *2 (S.D. Fla. July 19, 2013), *aff'd*, No. 1:12-CV-22437-UU, 2013 WL 12138559 (S.D. Fla. July 29, 2013) (noting that plaintiff submitted an affidavit but finding it "wholly conclusory and [with] few details to substantiate the claim that 'Notes' were created 'in anticipation of litigation'"); *see also Bridgewater*, 286 F.R.D. at 639 (explaining that "[u]nless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the privilege at all"); *cf. Abby v. Paige*, No. 10-23589-CIV, 2011 WL 13223681, at *2 (S.D. Fla. Nov. 30, 2011) (explaining party "typically" meets burden by affidavit but cannot "discharge that burden with conclusory allegations" and noting that declaration was "minimally useful"; provided "mostly . . . conclusory assertions"; was "not enough to establish the privilege claimed"; and, "to the contrary, it raise[d] more questions than it answer[ed]").

Eleventh, the mere issuance of a reservation of rights letter (or a response letter noting that an insurer is investigating under a reservation of rights) does not mean that the insurer reasonably anticipated litigation then (and that the work product doctrine applied at that time). *Liberty Surplus Ins. Corp. v. Kaufman Lynn Constr. Inc.*, No. 22-CIV-80203, 2022 WL 22832644, at *3 (S.D. Fla. Sept. 6, 2022). *See Gables Condo. & Club Ass'n v. Empire Indem. Ins. Co.*, No. 18-23659-CIV, 2019 WL 1317824, at *10 (S.D. Fla. Mar. 22, 2019) ("Although Gables cited a case to support its theory that a reservation of rights letter somehow causes an insured to anticipate litigation, the Undersigned does not find the

15

case persuasive."); *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1337–38 (M.D. Fla. 2007) ("Defending a claim under a reservation of rights is not the same as denying coverage. . . . During those time periods when Liberty was defending under a reservation of rights, any documents were presumptively prepared in the ordinary course of business. It was not until Liberty finally denied coverage on February 9, 2006, that it can be said that litigation was anticipated.").

Twelfth, turning to the attorney-client assertion, "in order to claim attorney-client privilege, the proponent of the privilege must prove that what is sought to be protected is (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, No. 18-CV-80311-REINHART, 2021 WL 505122, at *4 (S.D. Fla. Feb. 11, 2021) (citations omitted). Further, the Undersigned notes that "[t]he privilege is 'not absolute. Because it 'serves to obscure the truth, . . . it should be construed as narrowly as is possible consistent with its purpose.'" *Id.* (quoting *United States v. Noriega*, 917 F.2d 1543, 1551 (11th Cir. 1990)).

\*\*\*

The mere fact that ORC's counsel sent a demand letter on January 6, 2023 and advised Allianz to pay the undisputed portion of the claim within two weeks does not mean that Allianz anticipated litigation at that point. The investigation was in its early stages. The letter is similar to demand letters which insureds and their counsel submit

shortly after an insurance claim is submitted.

To be sure, the letter advised that ORC would "pursue all available remedies" if its demand was not met. But this is typical language which, in the insurance business, does not necessarily signal that the insured is about to file a lawsuit. Indeed, the proof is to the opposite. In a July 18, 2023 letter, ORC's counsel again demanded that payment of the undisputed portion be made within 14 days -- the same deadline provided in the January 6, 2023 letter. Moreover, the second letter did not say that ORC would pursue all available remedies if payment was not made in the two-week window provided.

Similarly, the CRN did not cause Allianz to anticipate litigation (on April 11, 2023). Attorneys frequently send CRN letters but they are not necessarily tethered to a current intent to pursue litigation. In fact, ORC's counsel sent another detailed demand letter after it filed the CRN, but this July 18, 2023 letter did not threaten litigation (nor did it say that all remedies would be pursued).

Given this reality and Allianz's failure to submit affidavits or declarations in support of its position about when its work product protection began, the Undersigned deems the March 22, 2024 claim denial to **trigger** the start of Allianz's work product protection.

As noted, the Undersigned has reviewed the attorney bill invoices for Allianz's outside counsel to see if they evidence any support for ORC's suggestion that Ms. Barnes-Reynolds was functioning as a claims adjuster involved in an insurer's standard business

17

practice of evaluating claims (as opposed to providing legal advice and relying on facts and documents to inform the judgment and advice she communicated to her client, Allianz).

The mere fact that Ms. Barnes-Reynolds drafted suggested language to be sent out on Allianz letterhead does not mean that she was not functioning as an attorney. The Undersigned rejects Plaintiff's theory as unsupported speculation.

Because Allianz's work product protection did not begin until the March 22, 2024 claim denial, reports sent to Allianz from its third party consultants before that date are **not entitled** to work product protection. The consultants were part of Allianz's routine investigation of a garden-variety (albeit substantial) water-damage claim.

However, to the extent that Allianz asserts the **attorney-client privilege** over communications with its outside counsel, the mere fact that the consultants it hired to factually investigate the claim were copied on those communications does **not** vitiate the privilege (as those consultants are agents or representatives of Allianz). *See generally In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219–20 (S.D.N.Y. 2001) ("[T]here is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice.").

The mere fact an attorney communicates with a third-party does not necessarily waive the attorney-client privilege. This is so because "[w]hen disclosure to a third-party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991); *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) ("Privileged persons include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation" (citation and quotation omitted)); *Tractenberg v. Twp. of W. Orange*, 416 N.J. Super. 354, 376 (App. Div. 2010) (privilege extends to "the necessary intermediaries and agents through whom the communications are made" (citation and quotation omitted)); *Rosetto v. Murphy*, No. 16-CV-81342, 2017 WL 1041569, at *4 (S.D. Fla. Mar. 14, 2017) ("Under Florida law, 'a communication between a lawyer and client is 'confidential' **if it is not intended to be disclosed to third persons other than those to whom disclosure is in the furtherance of the rendition of legal services to the client or those reasonably necessary for the transmission of the communication**.'" (quoting Fla. Stat. § 90.502(1)(c) (emphasis added)); *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-21511-CIV-GOODMAN, 2010 WL 3637958, at *4 (S.D. Fla. Sept. 20, 2010) (finding that attorney-client privilege was not waived and noting that "[the insurer] would be handcuffed in its ability to evaluate the claim if its [non-employee] field adjuster could not communicate with [the insurer]'s outside counsel without waiving the attorney-client privilege").

Finally, moving to Allianz's Amended Privilege Log [ECF No. 32-1], the Undersigned finds it **sufficiently detailed** and will **not** require it to prepare a more-detailed version.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on April 29, 2025.

Jonathan Goodman
CHIEF UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Darrin P. Gayles
All Counsel of Record